United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUVENAL RIOS, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v<br><br>AIRBORNE EXPRESS INC, et al,<br><br>    Defendants.<br>_____/ | No   C-05-2092 VRW<br><br>Related to case no<br>C-05-2203 VRW<br><br>ORDER |

        On February 18, 2005, plaintiff Juvenal Rios filed in San Francisco County superior court two class actions that defendants subsequently removed to this court pursuant to the Class Action Fairness Act, 28 USC § 1332(d).  Doc #1 of 05-2092; Doc #1 of 05-2203.  In the first removed case, C-05-2092 VRW, Rios alleges that defendants Airborne Express, Inc ("Airborne") and Service America Courier Corp ("Service America") violated California law by, inter alia, failing to pay various wages, furnish itemized wage statements or provide meal and rest periods to defendants' non-exempt, California employees.  Doc #1 of 05-2092, Ex 1.  In the second removed case, C-05-2203 VRW, Rios makes similar allegations

against Airborne, DHL Worldwide Express, Inc (the companies collectively referred to as "Airborne/DHL") and Service America on behalf of defendants' California employees who were station managers, station supervisors or dock supervisors. Doc #1 of 05-2203, Ex 1; id, ¶ 18.  The claims in both complaints arise under various provisions of the California Labor Code, Industrial Welfare Commission (IWC) Wage Order 4, Cal Code Regs, Title 8, § 11040 and Cal Bus & Prof Code §§ 17200 et seq.  For purposes of the present motions, 05-2092 and 05-2203 involve almost identical filings and issues; hence, all document references in this order will be to 05-2203 unless otherwise specified.

Although the parties do not dispute that Service America employs or did employ the putative class members, Rios additionally contends that Airborne and DHL were joint employers alongside Service America.  Doc #31 at 2, 3 of 05-2092; Doc #20 at 2, 3 of 05-2203;  Defendants moved to dismiss both cases with prejudice for failure to prosecute pursuant to FRCP 41(b).  Doc #23 of 05-2203.  Airborne and Airborne/DHL moved for summary judgment in 05-2092 and 05-2203, respectively, on the claims against them.  Doc #38 of 05-2092; Doc #27 of 05-2203.  Although Rios did not file an opposition to Airborne's and Airborne/DHL's summary judgment motions, Rios moved under FRCP 56(f) to continue deciding the summary judgment motions until he received additional discovery.  Doc #47 of 05-2203.  Rios also moved for relief from the case management schedule to delay filing a motion for class certification, which was to be filed by June 29, 2006.  Doc #31 of 05-2203.

//

**2**

At a June 29, 2006, hearing on the above motions, the court denied the motions to dismiss, denied without prejudice Rios's motions under FRCP 56(f) and granted Rios's motions for an extension of time to permit him to file by July 14, 2006, an opposition to Airborne's and Airborne/DHL's pending summary judgment motions. Doc #59 of 05-2203. Despite receiving this continuance, Rios did not file an opposition or move for a further continuance under FRCP 56(f).

To establish that Airborne and Airborne/DHL are liable, Rios must demonstrate that they were joint employers alongside Service America. California courts do not appear explicitly to have created a joint employer test, at least for the laws at issue here. But federal courts have construed the meaning of employment liberally when evaluating California claims and have looked to the federal Fair Labor Standards Act (FLSA) for guidance when consistent with the remedial purposes of California law. See, e g, <u>Bureerong v Uvawas</u>, 922 F Supp 1450, 1469-71 (CD Cal 1996). In particular, the <u>Bureerong</u> court applied FLSA definitions to California Labor Code claims because the federal and state provisions were analogous and complementary, IWC Wage Orders apparently had adopted definitions of employment in terms nearly identical to the FLSA's definitions and the California Supreme Court in construing a related California remedial statute had "cited with approval the various United States Supreme Court cases defining 'employment' in the context of the FLSA." Id. See <u>SG Borello & Sons v Department of Industrial Relations</u>, 769 P2d 399, 48 Cal 3d 341, 352 (1989).

//

1           In the present case, both parties assume that the joint
2   employer test as developed for the FLSA applies to Rios's state law
3   claims.  Doc ##49, 51.  Because of the similarities underlying the
4   FLSA and the California laws at issue here, the court applies the
5   FLSA's joint employer test to Rios's claims.

6           When determining joint employer status under the FLSA,
7   courts must consider the totality of the circumstances, including
8   "economic realities."  <u>Bonnette v California Health and Welfare</u>
9   <u>Agency</u>, 704 F2d 1465, 1469 (9th Cir 1983).  In <u>Bonnette</u>, the Ninth
10  Circuit found that determining joint employer status depends on
11  four primary factors:  whether the alleged employer (1) could hire
12  and fire employees; (2) supervised and controlled employee work
13  schedules or conditions of payment; (3) determined the rate and
14  method of payment and (4) maintained employment records.  Id at
15  1470.  See also <u>Moreau v Air France</u>, 356 F3d 942, 947 (9th Cir
16  2004).  In <u>Torres-Lopez v May</u>, 111 F3d 633, 639-40 (9th Cir 1997),
17  the Ninth Circuit added to this analysis eight secondary "non-
18  regulatory" factors that support joint employer status if:  (1) the
19  work done by the employee was analogous to a specialty job on the
20  production line; (2) the responsibility under the contract was
21  standard for the industry and could be passed from one contractor
22  to another without material change and little negotiation; (3) the
23  purported joint employer owns or has an interest in the premises
24  and equipment used for the work; (4) the employees did not have a
25  business organization that could shift as a unit from one worksite
26  to another; (5) the services rendered were piecework and did not
27  require special skill, initiative or foresight; (6) the employee
28  did not have an opportunity for profit or loss depending upon the

**4**

employee's managerial skill; (7) there was permanence in the working relationship and (8) the service rendered was an integral part of the alleged joint employer's business. Id at 640; Moreau, 356 F3d at 947-48. The Ninth Circuit has subsequently suggested that the first and eighth Torres-Lopez factors, which focus on whether the work was an integral part of the alleged employer's business, might not have any bearing outside of production line employment situations. Moreau, 356 F3d at 952.

The Ninth Circuit has also found that the Bonnette factors weigh heavily in determining joint employer status. See Moreau, 356 F3d at 946-47 (stating that the court "noted [in Bonnette] that the joint employment determination required consideration of the total employment situation, but focused primarily on [the] four [Bonnette] factors"). See also Bureerong, 922 F Supp at 1467-69 (relying only on the Bonnette factors in performing a joint employer analysis).

Rios bears the ultimate burden of persuasion on the issue whether Airborne and Airborne/DHL are joint employers with Service America. See Martinez-Mendoza v Champion International Corp, 340 F3d 1200, 1209 (11th Cir 2003) ("Because the laborer has the burden of proof [on his FLSA claim], to prevail he [ultimately] must establish the joint-employment inference by a preponderance of the evidence."). Hence, for purposes of the present summary judgment motions, Airborne and Airborne/DHL may discharge their burdens of production by demonstrating "that the nonmoving party does not have enough evidence of an essential element [of its claim] to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins Co v Fritz Cos, 210 F3d 1099, 1102 (9th Cir 2000). Rios may not

1 simply rely on the pleadings but must produce significant probative
2 evidence, by affidavit or as otherwise provided in FRCP 56,
3 supporting a claim that a genuine issue of material fact exists.
4 <u>TW Elec Serv v Pacific Elec Contractors Assn</u>, 809 F2d 626, 630 (9th
5 Cir 1987).

6 Airborne and Airborne/DHL have satisfied their burden of
7 production here. First, the <u>Bonnette</u> factors appear to weigh
8 strongly in their favor. The cartage agreements between Airborne,
9 Airborne/DHL and Service America indicate that Airborne and
10 Airborne/DHL are independent contractors, separate from Service
11 America. Masushige Decl, Exs A-D. One agreement states that
12 Service America has the sole: (1) "discretion and control as to
13 the manner and means of performance * * * and the selection and
14 supervision of its employees," (2) "responsibil[ity] for the
15 interviewing, hiring, training, disciplining and termination of its
16 employees" and (3) responsibility "to make all payments and prepare
17 all report concerning its business, income or employees * * *."
18 Id, Ex B, ¶¶ 3, 18. The agreement also states that "neither
19 [Service America] nor any of [Service America's] employees shall be
20 considered under the provisions of this Agreement or otherwise as
21 having any employee status with Airborne * * *." Id, Ex B, ¶ 18.

22 Airborne and Airborne/DHL also observe that the National
23 Labor Relations Board (NLRB) has recently affirmed an
24 administrative law judge's ("ALJ's") decision that Airborne was not
25 a joint employer with its contracted parcel delivery companies in
26 Rhode Island. Doc #27 at 9-10. The ALJ stated:
27 //
28 //

6

> Airborne cannot be construed as a joint employer with any of the contract cartage companies that it has engaged in this locality. The undisputed facts show that Airborne has entered into contracts which, by their terms, carefully and deliberately define a cartage company as an independent contractor who is to have full and complete control over the hiring, firing, discipline, work assignments and all other terms and conditions of employment of its own employees.
>
> There is no evidence whatsoever to indicate that Airborne, in Rhode Island, has had any say or influence in these decisions and no evidence to suggest that the hiring, disciplining or firing of a contractor's employees was in any way under the control or even the suggestion of Airborne. The day to day supervision of the drivers and dock persons employed by the contractors in Rhode Island have been carried out exclusively by the contractor's supervisors and no evidence was presented to suggest the contrary.

In re Airborne Freight Company, 338 NLRB 597, 605-06 (2002). Similarly here, the cartage contracts state that Service America exercises independent control over its employees and there is no evidence in the record that Airborne or Airborne/DHL controlled or supervised Rios and the other plaintiffs.

Because Airborne and Airborne/DHL have satisfied their burden of production, Rios must provide some evidence indicating there is a genuine issue of material fact whether these defendants were joint employers with Service America. But there seems to be no such evidence in the record and Rios has pointed to none. It is telling that Rios failed to file an opposition or provide any evidence to support his case even after the court granted him a continuance.

Although Rios has not filed another FRCP 56(f) motion, the court notes it is unlikely that additional discovery would have had any impact on the pending summary judgment motions. The

7

discovery that Rios had previously requested related only to the eight <u>Torres-Lopez</u> factors. Given the primacy of the <u>Bonnette</u> factors and how decisively they appear to favor defendants, this additional discovery likely would not have been particularly useful.

Moreover, Rios's previous discovery requests were overly broad and were at least somewhat irrelevant to the joint employer issue. For example, Rios had claimed that determining the third and seventh <u>Torres-Lopez</u> factors required discovering:

> Any and all RECORDS, DOCUMENTS, and/or WRITINGS that relate to Workers' Compensation policies entered into and/or in effect at any and all sites, including, but not limited to, stations housing alleged "independent contractors," in California operated, managed, leased or owned by AIRBORNE during the RELEVANT TIME PERIOD.

Doc #46 (Martinez Decl), Ex 5 at 11; Martinez Decl at 3, 5. But it is far from clear, and Rios has not bothered to elaborate, how this discovery would help determine whether the premises and equipment of the employer were used for work (<u>Torres-Lopez</u> factor 3) and whether there was permanence in the working relationship (<u>Torres-Lopez</u> factor 7).

In any event, Rios has already had sufficient time to obtain discovery in these seventeen-month old cases and the court declines to delay adjudicating the pending summary judgment motions any longer. Accordingly, the court GRANTS Airborne's motion for summary judgment in 05-2092 (Doc #38 of 05-2092) and GRANTS Airborne/DHL's motion for summary judgment in 05-2203 (Doc #27).

//
//
//

1    At the pretrial conference currently set for September
2 12, 2006, the remaining parties in these cases should be prepared
3 to address what issues, if any, remain to be adjudicated.

5    IT IS SO ORDERED.



8    **VAUGHN R WALKER**
9    **United States District Chief Judge**